SCHOTT, Chief Judge.
Plaintiff was injured by electricity when a crane or “cherry picker” he was using made contact with defendant’s power lines. The trial court dismissed his suit for damages and he has appealed. We affirm.
Plaintiff was employed by Professional Steel Fabricators as the superintendent of a crew working on the construction of a coal handling facility in Darrow, Louisiana. The facility was to consist of an area on the Mississippi River side of the levee commonly known as the batture and an area beyond the levee and the highway which was parallel to the levee. In the batture area coal was to be unloaded from ships or barges and would be transferred to the storage area across the highway and levee by an overhead conveyor. When this accident happened on April 14, 1983, coal had been unloaded and stacked in the batture area, but construction of the conveyor had not yet begun. The coal was being transported from the batture by dump trucks on a road which traversed the levee and crossed the highway to the coal storage area. Defendant’s power lines were located alongside the highway, on the land side, and over the road used by the dump trucks. These lines consisted of three primary phases carrying 13,800 volts and a neutral. The primary wires were strung on cross arms on poles and the neutral was below the cross arms.
On the day of the accident the Mississippi River had been rising to the point where the batture was about to be flooded. It was necessary for plaintiff to move Professional Steel’s equipment to the other side of the levee. This equipment included a ten-feet tall horse trailer converted for use as a tool storage shed. Plaintiff decided to move the trailer with a crane or cherry picker which was being used on the batture by Professional Steel. Joseph Moran, also an employee of Professional Steel operated the crane. Under plaintiff’s direction Moran hoisted the trailer with the crane and drove it on the road up and over the levee. Plaintiff went on the highway to stop traffic for the crane. As the crane crossed the highway it came into contact with the neutral line. Plaintiff said his back was to the crane at the time but he heard a popping or crackling noise when contact was made. Moran said the line “sizzled and broke”; it made “fireworks”. • Moran backed the crane off the highway and at plaintiff’s direction he lowered the trailer so that plaintiff could guide it at ground level.
At this point there is a direct conflict between plaintiff and Moran as to what occurred. Plaintiff stated that he directed Moran to lower the boom of the crane so that it could pass under the wires when, without any directions from him, Moran came forward with the crane until the boom came into contact with the primary wires causing electricity to pass through the cable and the trailer and into the body of the plaintiff as he was holding on to the trailer. According to Moran he was following plaintiff’s hand signals when he retracted the crane’s boom somewhat and went forward relying on plaintiff’s directions and thinking he would clear the *728 wires. In reasons for judgment the trial judge resolved this conflict as follows:
The operator of the cherry picker testified that Mr. Blue signaled him forward and he struck the power lines. Mr. Blue denied that he gave any signal for the cherry picker to move forward. The court finds that Mr. Blue did signal for the cherry picker to move forward.
We accept the trial court’s resolution of this conflict.
Each party produced a surveyor who, after the accident, measured the height of the power lines above the roadway. Plaintiff’s surveyor said they were 19.1', 20.1' and 20.4' above, while defendant’s said they were 20', 20.22' and 20.6' above. The trial judge found they were “about 20 feet off the ground.” That finding is not clearly wrong, but that was the height after the accident. The record shows that the height of the lines was reduced in the accident because one of the poles was pushed over. Consequently, all wires were more than twenty feet above the ground before the accident. The record shows that the boom of the crane was twenty-four feet above the ground when contact was made between the power line and the cable.
Weeks before the accident officials of Professional Steel and the coal facility’s owner, L & L Fleeting, had been negotiating with defendant to provide the electrical service needed to operate several large motors and to raise the power lines in order to clear the conveyor which was to be built. All necessary arrangements had been made for this phase of the work to begin on April 15. Plaintiff produced an expert who testified that defendant was obliged by the rules and interpretations of the National Electric Safety Code to determine what equipment was being used on this job and to raise the lines to accommodate the dump trucks as well as the crane. Defendant produced an equally qualified expert who flatly disagreed saying the Code contained no such requirements.
Plaintiff’s expert stated that the power lines were too low for the dump trucks using the road, but this testimony was flatly contradicted by defendant’s expert. The record shows that the height of the lines was in compliance with code requirements and the lines would never have been a problem for the dump trucks. Inherent in the decision of the trial court was its acceptance of the opinions of defendant’s expert over plaintiffs. The record provides no basis for this court to reach a different conclusion. The presence of the crane on the job was not related to the power lines except for this unanticipated emergency to move the equipment from the batture and plaintiff’s decision to move the trailer using the crane. Otherwise the crane would have stayed on the batture and never gone near the power lines.
This accident was most unfortunate for plaintiff, but he alone caused it. When the crane struck the neutral line plaintiff was given a dramatic warning of the hazard he was creating. Instead of heeding that warning he directed Moran to move the crane toward the wires without seeing the obvious, i.e., that the crane was bound to come into contact with the wires a second time. Plaintiff was an experienced, intelligent man who knew the dangers of operating tall equipment under power lines. He admitted that he was familiar with the “ten-foot” rule which requires that a crane should not be operated within ten feet of a power line. He stated that this rule was cited by a decal which was on the crane, and he knew that the crane could not possibly clear the lines by ten feet. It seems obvious that the facts of the case cannot support a judgment in his behalf.
Nevertheless, plaintiff argues that he is entitled to a judgment as a matter of law found in a number of cases, especially Levi v. S.W. La. Elec. Membership Co-op, 542 So.2d 1081 (La.1989). This recent case is a comprehensive treatment by the Supreme Court of the duty of a power company in an industrial setting to a workman who is injured in an accident like the one we are presently considering. After carefully reviewing the case, we have readily concluded that instead of supporting plaintiff’s position it clearly supports the judgment of the trial court.
*729 Some of the Levi principles especially applicable to this case are: A company which maintains and uses high power lines is required to exercise the utmost care to reduce hazards to life as far as practicable; a power company has an obligation to make reasonable inspections of wires in order to discover hazards; and a power company will be considered to have constructive knowledge of an electrical hazard which has existed for a period of time which would reasonably permit discovery had the company adequately performed its duties. 542 So.2d at 1084, 1085.
In Levi the power company had actual knowledge of the oil company’s regular use of trucks with retractable masts in the vicinity of powerlines specifically designed and installed on this industrial site by the power company. Because the use of this tall equipment around and under the pow-erlines had continued on a regular basis over a long period of time the power company should have been aware of the physical characteristics of the equipment and the electrical hazard it might create. The power company in designing the route of power lines around twenty-two oil wells in the field had avoided risks at every well site, but it failed to do so at the one where this accident happened because of an error in the original plans. It was perfectly obvious to the power company representatives that there was a strong potential for an accident at this particular site where Levi was injured in contrast to all the other well sites.
These facts stand in such sharp contrast to the facts of the instant case that further discussion seems unnecessary. In the instant case there was no regular use of any equipment except dump trucks under the power line. The use of the crane under the lines was an aberration that neither the power company nor anyone else could reasonably anticipate. The facts of this case provide no basis to conclude that defendant should have recognized that its conduct in having its power lines suspended over twenty feet above this road involved a risk of harm like the one plaintiff created for himself in this case.
The present case is not unlike Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982) in which the court absolved the power company of liability to a workman who was using a long rake which made contact with overhead power lines. As in the present case the court was confronted with power lines which had the required minimum clearance of twenty feet and the plaintiffs argument that the use of a 30-foot pole on the project constituted special circumstances which increased the hazard and dictated special precautions by the power company to reduce the risk. The court noted that except for the rake none of the equipment on the project was long enough or tall enough to reach the power lines and that a combination of unusual factors concurred to cause the accident. The court concluded that “[ujnder the overall circumstances, it is difficult to conclude that Gulf States acted unreasonably in failing to protect against these particular consequences.” The same conclusion follows in the present case.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.